**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil Action No. 20-14632 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Elizabeth F.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Plaintiff's request for disability insurance and supplemental income benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3), and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court affirms the Commissioner's decision.

**I.    BACKGROUND**

In this appeal, the Court must determine whether the Administrative Law Judge ("ALJ") erred by failing to (i) adequately consider the vocational expert's testimony concerning contact with supervisors during potential employment, (ii) appropriately consider the relevant symptoms

---

[1] Under Standing Order 21-10 for the U.S. District Court for the District of New Jersey, Plaintiff is referenced solely by first name and last initial. *See* Order 2021-10 (D.N.J. Oct. 1, 2021).

in determining the severity of Plaintiff's fibromyalgia and the resulting impact on her residual functional capacity, and (iii) account for Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace when considering suitable jobs for Plaintiff. The Court begins with a brief background of the procedural posture and decision by the ALJ.[2]

### A.   Procedural History

Plaintiff filed an application for Social Security disability insurance benefits and supplemental security income in June 2017, alleging an onset date of November 2016. (AR 10, 265.) Plaintiff's application was denied initially and then later on reconsideration. (*Id.* at 190-93, 201-03.) The ALJ conducted an administrative hearing and subsequently issued a decision (the "Decision") finding that Plaintiff was not disabled. (*Id.* at 7-26, 40-92.) Following Plaintiff's appeal, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-3.) Two months later, Plaintiff filed an appeal to this Court. (ECF No. 1.) Plaintiff moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[3] (ECF No. 11.) The Commissioner opposed (ECF No. 12), and Plaintiff replied (ECF No. 13).

### B.   The ALJ's Decision

The ALJ's written Decision first set forth the Social Security Administration's five-step sequential evaluation process for determining whether an individual is disabled. (AR 11-12 (citing 20 C.F.R. §§ 404.1520(a) and 416.920(a)).) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. (*Id.* at 12.) At step one, the

---

[2] The Administrative Record ("AR") is found at ECF Nos. 6 through 6-12. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date of November 18, 2016.[4] (*Id.* at 13 (citing 20 C.F.R. §§ 404.1571 and 416.971).)

At step two, the ALJ found that Plaintiff had the following severe impairments:

> [D]egenerative disc disease; osteoarthritis of the knees; status post right wrist fracture; asthma; chronic obstructive pulmonary disease (COPD); obesity; diabetes with neuropathy; fibromyalgia; hypothyroidism; bipolar disorder; anxiety; personality disorder; post-traumatic stress disorder (PTSD); and substance abuse disorder.

(*Id.* at 13 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) The ALJ also found several non-severe impairments in the record, including celiac disease, irritable bowel syndrome, dysphonia, and sleep apnea. (*Id.*) At step three, the ALJ determined that Plaintiff lacked an impairment or combination of impairments that met or medically equaled the severity of one of the Social Security Administration's listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13-16 (citations omitted).) As such, the ALJ determined that Plaintiff's evaluation needed to proceed to the next step.

Before step four, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work (as defined in 20 C.F.R. § 404.1567(a)), finding as follows:

> After careful consideration of the entire record, I find that [Plaintiff can] never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; occasionally reach overhead and frequently reach in all other directions; frequently finger and handle; and occasionally balance. She must never have exposure to extremes in environmental conditions or concentrated pulmonary irritants. She can have occasional contact with supervisors, co-workers and the public, and she is able to do only simple and routine tasks. She can sit for up to six hours in an eight hour workday, with the option to stand or change position, and can stand and/or walk for two hours in an eight hour workday.

---

[4] The ALJ characterized Plaintiff's work as a nurse between November 2017 and February 2018 as an "unsuccessful work attempt" and not SGA. (*Id.* at 13.)

3

(*Id.* at 16.) In making that determination, the ALJ found that Plaintiff was unable to perform any past relevant work as a licensed practical nurse, mentally disabled aide, and an account clerk, based in part on the vocational expert's testimony. (*Id.* at 24.) The ALJ determined that because Plaintiff was limited to sedentary work, the demands of her past relevant work exceeded her residual functional capacity. (*Id.*) The ALJ thus proceeded to step five.

At the final step, in assessing what jobs Plaintiff could perform in the national economy, the ALJ noted that Plaintiff was 36 years old, had a high school education, spoke English, and had prior work experience. (*Id.*) The ALJ determined there are "jobs that exist in significant numbers in the national economy" that Plaintiff could perform considering her age, education, work experience, and residual functional capacity. (*Id.*) As part of the ALJ's Decision that counseled this finding, the ALJ considered the medical records, opinions of multiple doctors and specialists, and testimony of the vocational expert. (*Id.* at 24-25.) Ultimately, the ALJ concluded that Plaintiff was able to perform sedentary work as a "semiconductor bonder," "taper circuit layout," or "document specialist," and found that Plaintiff was "not disabled" through the date of the Decision. (*Id.* at 25.)

## II.   LEGAL STANDARD

### A.   Judicial Review of the Commissioner's Decision

The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "relevant evidence [that] a reasonable mind might accept as adequate to

4

support a conclusion" and "more than a mere scintilla." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To that end, substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation and citation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted). An ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)).

### B.     Establishing Disability

To be eligible for disability benefits, a claimant must be unable to "engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do

5

[their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Pertinent regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). For the first step, claimants must establish that they have not engaged in any SGA since the onset of their disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If claimants satisfy the first two steps, the third step requires claimants to provide evidence that their impairments are equal to at least one of the impairments within the Listing of Impairments under Part 404, Subpart P, Appendix 1 ("Listings") of the relevant Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If claimants so demonstrate, they are presumed to be disabled and are entitled to disability benefits. *Id.* If they cannot, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' residual functional capacities permit them to resume their previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). If claimants can perform their previous line of work, then they are not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). If under the fourth step, claimants are unable to return to their previous work, the analysis proceeds to step five. 20 C.F.R. § 404.1520(e). At the fifth step,

the burden shifts to the Commissioner to demonstrate that claimants can perform other work that aligns with their medical impairments, age, education, past work experience, and residual functional capacity. *Malloy*, 306 F. App'x at 763. If the Commissioner cannot satisfy this burden, claimants will receive Social Security benefits. 20 C.F.R. § 404.1520(g).

## III.  DISCUSSION

Plaintiff argues that the Commissioner's final administrative decision must be reversed or remanded for three reasons: (1) the ALJ considered occupations during his step-five analysis that required more contact with supervisors during training than Plaintiff's RFC allowed for; (2) the ALJ considered irrelevant medical findings in assessing how Plaintiff's fibromyalgia impacted her RFC; and (3) the ALJ's RFC determination and finding that Plaintiff could perform certain jobs failed to account for Plaintiff's moderate limitation on concentrating, persisting, or maintaining pace. (Pl.'s Moving Br. 1, ECF No. 11.) The Court addresses each argument in turn.

### A.  *The Vocational Expert's Testimony Did Not Undermine the ALJ's Step-Five Conclusion.*

*First*, Plaintiff contends that the ALJ erroneously relied on the vocational expert's testimony at step five because the proffered jobs exceeded the amount of supervisory contact Plaintiff could tolerate, as set forth by the ALJ in his RFC determination. At bottom, the parties' disagreement involves semantics of the vocational expert's testimony and its impact on the ALJ's step-five determination. The relevant part of the testimony reads as follows:

> **Plaintiff's Attorney**: [W]ith regard to the occasional interaction with supervisors, coworkers and the public, did you understand that the occasional meant that the total time that the individual could interact in a day with [a] supervisor, workers and the public was one-third of the day or was it one-third for each of those three?
>
> **Vocational Expert**: It would be roughly a third of the day, so approximately like two and a half hours.
>
> \*\*\*

> **Plaintiff's Attorney**: Okay. So with regard to the supervisory function, in a fast-paced environment what would be the level of interaction with the supervisor in that setting?
>
> **Vocational Expert**: Well for the types of jobs that we're discussing which are at the unskilled level, there's really not going to be much difference as far as any of these settings in terms of interaction with supervisors. Typically it runs along about three times a day, usually relatively brief unless there's some sort of problem. So when the person comes on shift, making sure they know [w]hat they're supposed to do for the day, answer any questions, checking with them . . . . So that having been said, **that's well within the occasional or 2.5 hours in the workday as far as supervisory contact.** That's pretty standard. Again if there's some sort of unique duties, some special thing that's, you know, is going on, **there might be a little more contact. Obviously during the training [period] there would be.** But in general, once an individual has gone through the training period and has learned the job, there's really not any need for them to have more than just the type of contact that I've described here with the supervisor.[5]

(AR 76-77 (emphases added).) The parties' disagreement centers on whether the vocational expert concluded that the potential employment opportunities suggested for Plaintiff require more than "occasional" supervisory contact, defined as roughly one-third of the workday. (*See* Pl.'s Moving Br. 7-9; Def.'s Opp'n Br. 9-11, ECF No. 12.) Because the ALJ restricted Plaintiff to only occasional supervisory contact, Plaintiff argues, any reliance the ALJ had on the vocational expert's testimony at step five directly contradicted Plaintiff's RFC. (Pl.'s Moving Br. 7-9.) The Commissioner counters that Plaintiff is misconstruing the relevant testimony—the vocational expert merely stated that there would be more than the three daily check-ins each workday during training, still well within the definition of occasional contact. (Def.'s Opp'n Br. 10.)

---

[5] Both parties agree that the transcript for the administrative hearing held on July 23, 2019, contains a typographical error and that the vocational expert said, "training period" not "training people." (AR 77.)

8

The Court agrees with the Commissioner. At step five, the Commissioner must show that other jobs exist in the national economy that Plaintiff can perform, while accounting for the limitations imposed at earlier steps. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). The Commissioner met this burden here. As a preliminary matter, the ALJ expressly instructed the vocational expert that Plaintiff was restricted in supervisor contact. (*See* AR 72 ("[T]he first hypothetical is at the sedentary exertional level with the following limitations . . . [o]ccasional contact with supervisors").) Nothing in the record suggests that the vocational expert ignored the ALJ's instructions or did not understand this limitation.[6] Rather, a plain reading of the vocational expert's testimony illustrates that, for the types of recommended occupations for Plaintiff, these jobs would require (1) three "relatively brief" encounters with supervisors per day that fall "*well within* the occasional or 2.5 hours in the workday as far as supervisory contact" and (2) there would be "*more*" contact "during the training [period]." (AR 76-77 (emphasis added).) But the vocational expert never testified that the training period would exceed what Plaintiff could tolerate. (*See id.*) Thus, the Court finds substantial evidence to support the ALJ's reliance on the vocational expert's testimony.

**B.   *The ALJ's RFC Adequately Accounts for Plaintiff's Fibromyalgia and is Supported by Substantial Evidence.***

*Second*, Plaintiff claims that the ALJ miscalculated the RFC by misinterpreting what symptoms and treatments are associated with or available for fibromyalgia. (Pl.'s Moving Br. 12-13.) Plaintiff points to the ALJ's observation that Plaintiff had a "normal range of motion measurements" and "unremarkable physical exam findings" as support that the ALJ did not

---

[6] Plaintiff claims that the Commissioner offers a "[p]ost [h]oc" rationalization to justify the ALJ's step-five conclusion. (Pl.'s Moving Br. 9.) The transcript speaks for itself, however, and the Court disagrees that the ALJ failed to understand the vocational expert's testimony at step five.

understand fibromyalgia since, according to Plaintiff, these medical findings are unrelated to fibromyalgia. (Pl.'s Moving Br. 13 (citing AR 20).) In support of this argument, Plaintiff contends that the ALJ "erroneously believed that the absence of range-of-motion deficits contradicted [Plaintiff's] reports of pain and treating rheumatologist Dr. Tratenberg's opinions." (Pl.'s Moving Br. 14 (citing AR 20).) But nothing in the Decision suggests that these observations held substantial or dispositive weight in the ALJ's RFC calculation. (AR 20-21.) Rather, these observations were merely a recapitulation of Plaintiff's 2019 medical examination with Dr. Mark Tratenberg. (*Id.*)

The Court further disagrees with Plaintiff that the ALJ "unreasonably denigrated Dr. Tratenberg's opinions" and medical observations. (Pl.'s Moving Br. 14.) In finding the "extreme limitations" assigned to Plaintiff by Dr. Tratenberg in June 2019 unpersuasive, the ALJ compared and considered Dr. Tratenberg's medical reports from just two months earlier that reflected Plaintiff was exercising regularly. (AR 22 (noting Dr. Tratenberg's April 2019 medical findings).) The ALJ also weighed conflicting medical opinions from other doctors. (AR 23 (finding "[r]ecent rheumatology records reveal that [Plaintiff] exercises by walking and yoga").) ALJs are afforded discretion in weighing the evidence before them when assigning an RFC determination, and the Court's review is limited to evaluating whether substantial evidence supports that conclusion. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361-62 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). Here, the Court finds it does.[7] For the same reasons, the ALJ's mere mention that Plaintiff was seeking conservative treatment for her fibromyalgia does not otherwise invalidate

---

[7] The Decision does not support Plaintiff's accusation that the ALJ "played doctor" and substituted the opinions of medical professionals for his own. (Pl.'s Moving Br. 14. *But see* AR 18 (citing medical reports detailing Plaintiff's daily exercise), AR 19 (considering Plaintiff's May 2017 medical evaluation), AR 20 (weighing Dr. Tratenberg's finding that Plaintiff stopped exercising despite "no significant change in her symptoms").)

10

his holistic review of the record or suggest that the ALJ did not find fibromyalgia serious. (*Compare* Pl.'s Moving Br. 15-16 (citing AR 22), *with* AR 13 (finding fibromyalgia a severe impairment), AR 13 (further limiting Plaintiff's RFC to sedentary due to her fibromyalgia).) The Court finds no error in the ALJ's decision to assign limited value to Dr. Tratenberg's June 2019 medical report.

### C. *Substantial Evidence Supports the ALJ's Determination That Plaintiff is Capable of Simple Tasks and Can Perform Sedentary Work.*

*Third*, Plaintiff argues that the ALJ did not adequately translate the moderate mental limitation he imposed on Plaintiff—that she had limitations in concentration, persistence, or maintaining pace—into the ALJ's RFC determination and his subsequent questioning of the vocational expert. (Pl.'s Moving Br. 17-20.) According to Plaintiff, this oversight by the ALJ manifests in his determination that Plaintiff can perform sedentary work, notwithstanding certain medical opinions in the record that Plaintiff would be routinely "off-task." (*Id.* at 19 (citing AR 13, 22-23).) The Court disagrees and finds that the ALJ adequately explained his "simple task" assessment. (AR 16-24 (explaining assessment that Plaintiff "is able to do only simple and routine tasks")); *see Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (as long as the ALJ offers a valid explanation, a "simple tasks limitation is permitted after a finding that a claimant has moderate difficulties in concentration, persistence, or pace" (internal quotations omitted)). Thus, because the "valid explanation" rule "remains the law in [this] [C]ircuit," the Court finds that the ALJ's RFC assessment adequately explains why the ALJ believed Plaintiff can perform simple tasks. *Id.* at 212. The same is true for the ALJ's explanation of why he believed Plaintiff can perform sedentary work. (*E.g.*, AR 15 (noting that Plaintiff testified that she can "reason and rationalize when she thinks things over" in examining her mental limitations), AR 15 (reflecting that Plaintiff's "psychiatric treatment notes reveal that she generally demonstrates intact

11

associations, logical thinking, and appropriate thought content on mental status examination"), AR 23 (citing medical finding that Plaintiff can follow simple work instructions and normal findings on mental status examination), AR 23 (finding Plaintiff was doing well in school while attending).) In sum, the Court finds substantial evidence in the record to support the ALJ's RFC determination with respect to Plaintiff's mental impairments.

### IV.    CONCLUSION

Having reviewed the ALJ's Decision as a whole, the Court affirms the Commissioner's final decision and denies Plaintiff's appeal. The Court will issue an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**